### MOORE CARVING MACH. CO. v. CLEMONS MACH. CO.

(Circuit Court, W. D. New York. November 15, 1911.)

#### No. 411.

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—POLISHING MACHINE.

    The Gale patent, No. 685,328, claims 1 and 3, for a polishing machine, having a rubbing or polishing belt and a reciprocative head with means for pressing the belt to its work, while valid, in view of the prior art, must be limited to the particular means shown for pressing the reciprocating head to the belt. As so limited, *held* not infringed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—POLISHING MACHINE.

The Yarnell patent, No. 743,608, for a polishing machine, claim 7, was not anticipated, and covers an improvement of such undoubted merit as to entitle it to a liberal construction; also, *held* infringed.

In Equity. Suit by the Moore Carving Machine Company against the Clemons Machine Company for infringement of two patents. On final hearing. Decree for complainant on one patent and for defendant on the other.

Paul & Paul (A. C. Paul, of counsel), for complainant.
J. William Ellis, for defendant.

HAZEL, District Judge. [1] Final hearing on patents No. 685,-328, dated October 29, 1901, issued to Henry P. Gale and assigned by him to the complainant, and No. 743,608, dated November 10, 1903, issued directly to the complainant on application filed by Charles S. Yarnell, the inventor. The said patents relate to improvements in rubbing and polishing machines in which the surfaces of the material are polished or sanded by the belt. The principal objects of Gale were (1) to provide a reciprocating head piece to press the belt upon the work; (2) to balance the head of the machine so that the pressure could be regulated by a lever that stopped the machine; (3) to provide means for applying the head to the belt at any desired point without reciprocation; (4) to destroy the friction from pressing the head to the belt. His patent has 15 claims; but claims 1 and 3 only are here in issue. Claim 1 reads as follows:

"1. In a rubbing and polishing machine, a rubbing or abrading belt suitably mounted for running the same, a reciprocative head having means for pressing said belt to its work."

Claim 3 is substantially the same, save that it provides for mounting the head within the belt to work from the center out each way pressing said belt to its work. The principal defenses are: That the claims of the Gale patent in issue are void unless limited to the means for pressing said belt to its work and anticipation.

Examining the prior art, it is ascertained that the first machine for polishing and rubbing surfaces of wood was patented by J. B. Morris in the year 1860. He mounted a stationary roller within the belt on the inner side, and used a sliding table upon which the material to be polished rested. Afterwards comes the Maddox patent, No. 650,407, which shows a reciprocating head or abrading member mounted on a guide firmly attached to the frame of the machine. The reciprocating head operated directly as a polishing or sanding medium upon the work. It was not interposed between the belting, as in complainant's machine, and the pressing means were applied through the vertical motion of the carriage or table. In the Huseby patent, No. 637,121, is described an abrading belt with a rigid head, mounted upon the inner side of the belting, arranged to press the belt to the work; while in the Totman patent, No. 348,177, there is a roller which contacts the inner side of the lower stretch of the belt, and the latter, as it runs, rubs or polishes the work resting on the table. The

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

frame which supports the roller in the Totman structure is arranged to move or travel horizontally across the machine carrying with it the rollers and belt.

The Gale patent in suit was limited by the action of the Patent Office on the patents to Morris, Huseby, and Totman to a reciprocating head with means for pressing the belt to its work. The question now is: Whether the scope of claims 1 and 3, properly construed, includes the defendant's structure wherein is employed a pressure, caused by the upward movement of the carriage or table, which presses the belt against a reciprocating head firmly attached to a guide. In the Clark patent, No. 570,866, which the defendant urges as an anticipation, a polishing machine is shown wherein the belt winds partially around the tube or article to be polished, and, as the belt is driven, the pulleys, which act as a guide for it, reciprocate, or are swung to and fro by an oscillating plate with which they connect. By the movement of the pulleys, the position of the belt in relation to the article polished is changed to enable the belt to rub every part thereof. The specifications describe two pairs of rollers which operate to press the belting to the work, and which engage the inner sides of the belts. The Clark structure discloses the idea of pressing the rollers, swinging, forward and backward, to the inner side of the belting and to the material to be polished. True, in the Gale device, the reciprocating head moves lengthwise, and the rollers, in the Clark structure, move in a curved line; but such difference is not thought material in view of Gale's manifest purpose to provide means for polishing a straight or curved work. In appearance the Clark machine is unlike that of complainant's; but, though different in form, it evidently performs substantially the same function. The claims in suit it is thought must, therefore, and because of the prior art, be interpreted to cover merely the particular means for pressing the reciprocating head to the belt; that is, a guide bar on which the head travels vertically to press the belt to the material operated upon. Such means for pressing the belt were new and novel in the combination in suit. The Gale patent was not basic, nor was it the first polishing machine with a belt suitably mounted and a reciprocating head having means to press the belt to the work. Such an arrangement, as heretofore stated, is found in the Clark patent. Moreover, the Hess patent No. 412,616 comes close suggesting the idea of a reciprocating head between the belting pressing the belt to the work. In such device the head is moved by hand over the work to be polished, and it is therefore quite probable that, if it stood alone, it would scarcely be entitled to consideration for the purpose of limiting the claims in suit. While the prior art is not anticipatory, yet there is disclosed such nearness to the Gale machine that it is evident that one of the problems presented to the patentee was to devise a particular method for lowering the reciprocative head to the abrading belt, instead of the familiar method of raising the table or carriage to contact with it.

The defendant's structure does not embody the specific means of the patentee for reciprocating the head and for pressing the belt.

In its machine the head is located on the inner side of the belt as in the Gale machine, but it does not move upward or downward to the belt. It is rigidly attached to a stationary guide bar, while the work table or carriage is raised by the operator to press the belt to its work. Practically the same result is achieved as in the complainant's device, but I think in a substantially different way and without appropriating its methods for pressing the belt down to the work.

[2] As for the Yarnell patent. In the Gale patent the specification described means for adjusting the crank-pin which actuated the reciprocative head; but such adjustment required the workman to frequently stop the machine, loosen the pin, and, after shifting its position in the slot wherein it was mounted, to again fasten it. This caused delay in operation, and eventually led to the present improvement by which means were provided for regulating the stroke of the reciprocating head without stopping the machine. To accomplish his object, Yarnell adjusted the crank-pin within the slot toward and from the axis on which the crank-pin moves to perform its work of reciprocating the head. He abandoned Gale's slot and oscillating gear arrangement, substituting therefor a rock-shaft, having in one end a slot or crank-arm, and upon which he arranged an adjustable block. He also mounted a threaded shaft in the crank-arm in such manner as would enable moving the block and crank-pin to and from the center of the rock-shaft. By this adaption the stroke of the reciprocating head was regulated by the workman while the machine was running and performing its work.

The seventh claim in issue, containing the combination, reads as follows:

"7. The combination in a rubbing and polishing machine, with a polishing belt, of a reciprocating head arranged to engage said belt and press it to its work, suitable mechanism for reciprocating said head, and means for regulating the throw of the head without stopping the machine, substantially as described."

The defendant contends that the claim lacks novelty, and also that the patents to Crisp, No. 210,452, and Olin, No. 571,495, are anticipatory, or at least, limit the claim to the details of construction set forth in the specification. The Crisp patent describes a mechanism for regulating the length of the reciprocating member without stopping the machine, but I am left unpersuaded by the evidence that such mechanism or the mechanism of the Olin patent is combinable with a machine of the type under consideration. The function of regulating the stroke in the Crisp device is without the employment of the adjustable crank-pin or complainant's axial arrangement of the shafts. Indeed, the arrangement of the shaft is not to actuate the movable member, and the means employed to accomplish the reciprocation were materially dissimilar to Yarnell's adaption; nor is the Olin patent anticipatory. In that patent, which was for checking the speed of an internal combustion engine, there are no means shown for regulating the movement of the reciprocating head, and the description does not disclose an adjustable crank-pin or its equivalent. The solution of Yarnell's problem resided in the adaption of a different mech-

anism differently assembled than is shown in the prior art. Even though each element of claim 7 were old, it could scarcely be contended that there is here an unpatentable combination, for the introduction of novel and distinctive means in an abrading machine for the regulation of the stroke of the reciprocative head without stopping the running of the machine was an improvement of such undoubted merit as entitles claim 7 to a more liberal scope than was accorded claims 1 and 3 of the Gale patent.

Yarnell was the first to adopt such means in machines of the type under consideration. In such circumstances, it is unnecessary, to constitute infringement, that the entire combination should be used in precisely the same way as described and claimed in complainant's patent. The improvement is capable of being appropriated in machines of this type without the employment of the same means for pressing the abrading belt to its work. It is true the defendant's mechanism is somewhat different from complainant's, and the material parts are assembled in a somewhat different way. Nevertheless, the essential element of the invention in suit is appropriated to achieve a similar result. It satisfactorily appears by the testimony of Mr. Wilhelm, complainant's expert witness, that in both the machines there is a shaft or spindle arranged in the axial line in which the member moves which carries the crank-pin and this shaft or spindle controls the position of the crank-pin, and affects its movements toward and from the fulcrum, on which the pin moves, with the result that the stroke of the head is changed. It is well-settled law that each inventor is entitled to his own specific form, only if it differs from others, and does not include theirs. The arrangement of the crank-pin which controls the adjusting device in the defendant's machine lengthens the reciprocative motion of the head, and while, as said, the mechanical details are different, yet the very purpose of the patent in suit is accomplished by equivalent means without making any patentable departure.

Claim 7 of the Yarnell patent is infringed by this defendant, while the Gale patent, though valid, is not infringed.

A decree in accordance with these views may be entered without costs to either party.